UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CORDELL M. RUSSELL,            :
                               :
         Petitioner,           :
                               :
v.                             :     ACTION NO. 2:15cv51
                               :
ERIC WILSON,                   :
                               :
         Respondent.           :

## REPORT AND RECOMMENDATION

Petitioner Cordell Russell ("Russell") is a federal inmate presently serving a ninety-month sentence following his conviction of being a felon in possession of a firearm and ammunition. He has filed a habeas petition under 28 U.S.C. § 2241, raising a due process challenge to his prison disciplinary proceedings which resulted in a loss of good time credit. Respondent filed a motion to dismiss with the required notice to Russell under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(k). Russell responded, and the motion was referred to the undersigned United States Magistrate Judge for a recommended decision, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons outlined below, the undersigned RECOMMENDS that the Court GRANT Respondent's motion (ECF No. 3) and DISMISS the petition.

1

## I. STATEMENT OF THE CASE

The United States District Court for the District of South Carolina sentenced Russell to a ninety-month term of imprisonment on May 3, 2011, following his guilty plea to the offense of felon in possession of a firearm and ammunition. During his incarceration with the Bureau of Prisons ("BOP"), Russell has earned a total of 176 days of good conduct time. Russell has also received one incident report for violations of BOP conduct regulations. That is the incident report at issue here.

BOP officials originally filed the incident report September 2, 2012, charging Russell with: (1) possession of a hazardous tool, in violation of Code 108 of the BOP disciplinary rules and (2) being in an unauthorized area, in violation of Code 316. Both violations were based on allegations by Officer Heckman that Russell possessed a cellular phone and charger (the hazardous tool), while being "in the woods" and thus, out of bounds, along the perimeter of the prison camp at FCI Williamsburg.[1] Incident Report 2346459 (ECF No. 4-1, at 20) ("the incident report").

---

[1] Russell has been incarcerated at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"), from approximately August 19, 2014 to the present. Thus, the Court has jurisdiction to hear his § 2241 application. See, e.g., Hajduk v. United States, 764 F.2d 795, 796 (11th Cir. 1985) ("A petition for a writ of habeas corpus may only be brought in the court having jurisdiction over the petitioner or his place of incarceration."). Previously, he was incarcerated at the

2

The same day as the incident, Officer Heckman filed the incident report and provided Russell with a copy. The charge was referred to the institution's disciplinary hearing officer ("DHO") two days later, on September 4, 2012. Russell received copies of both the "Inmate Rights at Discipline Hearing," (ECF No. 4-1, at 23) ("the Rights Form") and the "Notice of Discipline Hearing Before the Disciplinary Hearing Officer," (ECF No. 4-1, at 24) ("the Notice Form"). On the Notice Form, Russell signed and indicated that he did not want a staff representative or to present witnesses. (ECF No. 4-1, at 24). However, he refused to sign the Rights Form, which would have served to acknowledge that he had been advised of his rights before the DHO. (ECF No. 4-1, at 23). On the line for the inmate's signature, someone wrote "refuse no comment" and dated it September 4, 2012. Id.

On September 5, 2012, the DHO held a hearing on the incident report. Around October 12, 2012, BOP transferred Russell from FCI Williamsburg to FCI Texarkana. See BOP Inmate History (ECF No. 4-1, at 13). After reviewing the evidence, the DHO at FCI Williamsburg found that the offense elements had been proven for the prohibited acts of possessing a hazardous tool,

---

Federal Correctional Institution - Williamsburg in Salters, South Carolina ("FCI Williamsburg"), from approximately March 28, 2012, through October 12, 2012. He was also previously incarcerated at the Federal Correctional Institution in Texarkana, Texas ("FCI Texarkana"), from approximately October 25, 2012, through October 18, 2013.

3

Code 108, and being in an unauthorized area, Code 316. In his report dated October 19, 2012 and addressed to Russell, the DHO stated:

> Your due process rights were reviewed with you by the DHO at the time of the hearing. You stated you understood your rights and had no documentary evidence to present. You declined the services of a staff representative to assist you at the hearing. You indicated to the DHO you were ready to proceed with the hearing.
> The DHO found you committed [the] prohibited act of possession of hazardous tool, (cellphone) Code 108, and Code 316 being in an unauthorized area (out of bounds).
> The DHO bases this decision on the facts presented in the body of the written report. While conducting rounds of the boudnaries [sic] of the prison camp, staff report seeing you along the woodline of the perimeter (out of bounds to inmates) and when you were spotted you crouched down with a blue cannister at your feet. There was also a pakc [sic] of Newport ciggarettes [sic] and a lighter at your feet. You began to walk off and staff instructed you to stop. The cannister was searched and revealed a cellphone and charger. You attempted to plea to staff to not turn you in for this action.
> You presented no defense during the investigation phase, or UDC. The DHO considered the statement of staff to be credible, and that you had no defense.
> The DHO believes the written report of facts, and the evidence presented at the hearing, provides evidence to indicate you committed the prohibited act.

DHO Report at 2 (ECF No. 4-1, at 27). For the violation of Code 108, the DHO sanctioned Russell with the disallowance of forty days of his good conduct time, forty days of disciplinary segregation, seven months loss of general visiting privileges, and seven months loss of email privileges. Id. For the violation of Code 316, the DHO imposed ten days of disciplinary

4

segregation. Id. Upon his arrival at FCI Texarkana, Russell indicated that he had not received a copy of the DHO report, but a BOP record entry dated November 18, 2012, indicates that FCI Texarkana eventually received Russell's central file sometime after October 28, 2012. (ECF No. 4-1, at 28).

On November 27, 2012, Russell filed an administrative remedy request, appealing the DHO's finding of guilt and his sanctions. After an initial rejection of the appeal due to Russell's filing in the incorrect BOP regional office, Russell successfully filed his appeal December 26, 2012. Then on February 12, 2013, BOP's South Central Regional Director ordered the DHO at Russell's then-current institution, FCI Texarkana, to conduct a rehearing on the underlying incident report because staff at FCI Williamsburg had failed to complete a required section of the Rights Form after Russell refused to sign it. Memorandum (ECF No. 4-1, at 34).

On February 22, 2013, BOP re-issued an incident report to Russell for the same case number. He was notified that the Unit Discipline Committee ("UDC") and DHO would be conducting a rehearing for the incident report, to "comply with a recent decision by the SCRO for the UDC to rehear these charges for [incident report] #2346459." (ECF No. 4-1, at 37). The allegations underlying the incident report remained the same as in the previously issued incident report dated September 2,

5

2012. Id. at 38. The charge was referred to FCI Texarkana's DHO on February 22, 2013. Russell again received copies of the Notice Form and the Rights Form, on February 20 and 22, 2013, respectively. This time, Russell indicated that he wanted a staff representative, but still did not wish to call any witnesses. (ECF No. 4-1, at 42). He specifically requested T. Brown Robinson as his staff representative. Id. And, he signed the Rights Form, acknowledging that he had been advised of his rights. Id. at 41.

The DHO at FCI Texarkana held the rehearing on March 8, 2013. Russell's staff representative appeared and provided the statement: "I'm here to make sure his rights aren't violated." Id. at 44. The DHO summarized Russell's statement as: "I was in the woods but the phone wasn't mine. I was crouched down by a tree. I was hiding from him because I was out of bounds. I was smoking." Id. Russell did not call any witnesses. Id. at 44-45.

After reviewing the evidence, the DHO found that Russell committed the act as charged. Specifically, this DHO reported to Russell:

> Your due process rights were reviewed with you. I confirmed you received a copy of the incident report, did want a staff representative, did not want to call witnesses, and had no documentary evidence to present. You understood your due process rights and were prepared to proceed with your disciplinary hearing.

6

>I find you have committed the prohibited act of Code 108, Possession of a Hazardous Tool, and Code 316, Being in an Unauthorized Area, on September 2, 2012, at FCI Williamsburg Satellite Camp. The evidence relied upon to support this finding is the written statement of Officer Heckman, dated September 2, 2013 [sic], stating that he witnessed you crouched in the woods with a blue canister at your feet and an open pack of Newport cigarettes and a green lighter. When he initially approached you, he smelled cigarette smoke and you tried to walk off. He instructed you to come back and explain why you were in the woods. You could not explain why you were in the woods and he went to the location the canister and cigarettes were at. He opened the canister and found a cell phone and charger. You then started to plead with him by asking him to let you live and this won't happen again. You offered to break the cell phone and asked him to claim he found it in that condition.

DHO Report (ECF No. 4-1, at 45) (dated March 14, 2013). The Texarkana DHO imposed the exact same sanctions previously imposed by the Williamsburg DHO. (ECF No. 4-1, at 46). For the violation of Code 108, the DHO sanctioned Russell with the disallowance of forty days of his good conduct time, forty days of disciplinary segregation, seven months loss of general visiting privileges, and seven months loss of email privileges. Id. For the violation of Code 316, the DHO imposed ten days of disciplinary segregation. Id.

Russell filed for an administrative remedy, appealing the second DHO decision on March 28, 2013. BOP's Regional Office denied Russell's appeal by a letter response dated May 23, 2013. (ECF No. 4-1, at 48-49). In that response, the Regional Director outlined the underlying evidence and concluded that

7

"[a]fter thorough review of the incident report, the investigation, the evidence, and related documentation, there is sufficient evidence presented to support the DHO's decision." Id. at 48. It also notified Russell that he could appeal the decision at the regional level to BOP's Central Office, Administrative Remedies Section, in Washington, D.C. within thirty days. Id. at 49.

Accordingly, on June 27, 2013, Russell submitted an administrative remedy request to BOP's Central Office, appealing the regional decision on the incident report. As sworn by Cornelia Coll, Paralegal Specialist for BOP, the Central Office had not rendered any response to Russell's appeal as of March 31, 2015. Decl. of Cornelia Coll ¶ 20 (ECF No. 4-1, at 7). Due to the time that has passed since the filing of his appeal, Russell can consider his appeal to the Central Office denied. See 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."). Thus, Russell has exhausted his administrative remedies with regard to his appeal of incident report 2346459.

Russell filed his present § 2241 application for a writ of habeas corpus February 4, 2015. "Though not among the Wolff, due process criteria, [Russell] alleges that the BOP failed to

8

follow the time limits for disciplinary proceedings." Pet'r's Mem. at 2 (ECF No. 1, at 4). Contrary to the record, i.e., the Notice Form signed by Russell, Russell alleges that he "requested to have witnesses and that the phone [be] put through proper channels and check for corresponding numbers matching petitioner's contacts." Id. at 3 (ECF No. 1, at 5). Russell claims that he "was not allowed to have witnesses nor was the phone check[ed]." Id. Russell also alleges that his staff representative "failed the very notion of advocacy." Id. Russell also claims error from the entry in the Texarkana DHO's report listing the incident date as "9/2/2013," as opposed to "9/2/2012." Id. Finally, in his responsive brief, Russell argues that BOP's failure to complete the appropriate section of BOP's form after Russell refused to sign his Rights Form in the first DHO hearing, deprived him of his due process rights and was a breach of his plea agreement. (ECF No. 6, at 2). As a result of BOP's alleged failures to follow its own regulations, Russell seeks a show cause order, appointment of counsel, an evidentiary hearing, to have his disciplinary charges dismissed, and restoration of his good time. (ECF No. 1, at 6); (ECF No. 6, at 3).

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

To obtain habeas relief under § 2241, the petitioner must demonstrate that he is being detained in federal custody, "in

9

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Russell alleges that the execution of his sentence violates the Constitution of the United States because the DHO's hearing deprived him of his Fifth Amendment right to due process. However, Russell has failed to show that BOP denied him his constitutional right to due process.

It is well-established that a prisoner's earned good conduct time "is sufficiently embraced within [Fifth] Amendment 'liberty' to entitle [the prisoner] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." <u>Id.</u> at 555. To the contrary, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Id.</u> As the Supreme Court has explained:

> The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by

10

extending the length of imprisonment. Thus, the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily. This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative remedies that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation.

Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-55 (1985) (citations omitted).

Accordingly, the Due Process Clause requires that a prisoner subject to a loss of good time credit through disciplinary sanctions be afforded: (1) written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action. Wolff, 418 U.S. at 563-67; see also Crawley v. Wilson, No. 2:11cv542, 2012 WL 2505118, at *4 (E.D. Va. May 16, 2012). In addition, the findings of the prison disciplinary board must be "supported

by some evidence in the record." Hill, 472 U.S. at 454. BOP met each of these requirements in Russell's case.

First, Russell received twenty-four hour advanced notice of the charges against him prior to the rehearing[2] regarding the incident report. Russell acknowledged receipt of copies of the Rights Form on February 22, 2013 and the Notice Form on February 20, 2013, which listed the charges and the offense date. (ECF No. 4-1, at 41-42). The rehearing on the incident report was held on March 8, 2013 – more than ten days after his notice. (ECF No. 4-1, at 44). Second, Russell received a neutral and detached hearing officer because there has been no evidence offered to suggest that the DHO was not impartial and capable of hearing the evidence before him.

Third, Russell had the opportunity to call witnesses and present documentary evidence. Although he now claims that he "was not allowed to have witnesses," Russell clearly checked the box on the Notice Form to indicate that did not "wish to have witnesses," and signed the form. (ECF No. 4-1, at 42). He has not offered any evidence that BOP denied him the opportunity to

---

[2] To the extent that Russell claims error with respect to his first DHO hearing in FCI Williamsburg, see Pet'r's Reply Br. (ECF No. 6, at 2-3), his claims are moot and without merit. Following the error in paperwork, BOP ordered a rehearing on the incident report, which resulted in a DHO hearing the evidence anew. See (ECF No. 4-1, at 34-35, 45-46). Therefore, any error in Russell's initial hearing was cured because that hearing and that DHO's finding had no effect. Accordingly, the only procedure under constitutional scrutiny here is Russell's rehearing by the DHO at FCI Texarkana.

12

call witnesses and the record shows that BOP did in fact afford him such an opportunity. See id.

Fourth, even though there was no suggestion that Russell was illiterate or the disciplinary hearing was complex, BOP afforded him an opportunity for non-attorney representation. See Notice Form (ECF No. 4-1, at 42). Russell requested a staff representative. Id. And, the specific representative Russell requested appeared for his hearing. Id. at 44.

Fifth, Russell received a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary sanctions imposed. The DHO certified that he gave a copy of his findings report to Russell. (ECF No. 4-1, at 46). And, Russell timely appealed the DHO's ruling. See (ECF No. 4-1, at 32, 48). Indeed, Russell has not alleged that he did not receive the findings – a claim that would be difficult to make, when he did in fact appeal the ruling.

Finally, the DHO's findings were supported by "some evidence" in the record. Hill, 472 U.S. at 454. Assessing BOP's disciplinary finding for substantive evidence "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Hill, 472 U.S. at 455. All that is required is that there be "any evidence in the record that could support the conclusion reached by the discipline board." Id. at 455-56.

13

Here, there is ample evidence in the record to support the DHO's decision, finding that Russell committed the violations charged in the incident report. Evidence at the rehearing included the original incident report describing the September 2, 2012 incident, including statements from Russell and the reporting officer, Officer Heckman. DHO Report (ECF No. 4-1, at 44-46). As described above, Officer Heckman reported that he witnessed Russell at the wood line perimeter of the prison camp, crouched down with a blue canister at his feet, and with an open pack of cigarettes and a lighter. Id. at 45. Officer Heckman smelled cigarette smoke, and when he approached Russell, Russell tried to walk away. Id. Officer Heckman then found a cell phone and charger in the canister, at which time Russell offered to break the cell phone and asked the officer to say that he had found the phone in that condition. Id.

Russell admitted that he was in an area where he was not supposed to be, and that he had been smoking. Id. Based upon all of the evidence, the DHO determined that Russell had in fact been in possession of a hazardous tool (cell phone) and in an unauthorized area. The DHO specifically stated that he did not find Russell's defense to be credible, and that it was "highly unlikely [Russell] would be hiding in the woods to smoke and just happen to be next to a canister holding a cell phone and charger." Id.

Having relied upon the incident report and the reporting officer's description of Russell's conduct, in combination with Russell's admissions, the DHO's decision was supported by "some basis in fact," as required by the Due Process Clause. Barry v. Whalen, 796 F. Supp. 885, 896 (E.D. Va. 1992) (quoting Hill, 472 U.S. at 456). Russell has failed to show that he is in custody in violation of the Constitution or laws of the United States.

Russell's remaining argument is also without merit. In addition to his general claim that BOP denied him due process under Wolff, Russell argues that he is entitled to relief because BOP allegedly failed to follow its own rules on timing within the disciplinary process. Pet'r's Br. (ECF No. 6, at 2-3). However, the time limit Russell refers to - that he "must be adjudicated within 72 hours" of receiving the incident report - does not exist in BOP regulations. Russell provides no citation. And, the BOP regulations that do govern the disciplinary process only reflect the usual time frames for resolution that prisoners can expect, not mandates. See, e.g., 28 C.F.R. § 541.7(c) ("The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays."). Moreover, even if such compulsory time limits did exist, a violation of BOP's internal regulations would not necessarily give rise to a constitutional violation or habeas relief. See,

e.g., Edwards v. Johnson, 209 F.3d 772, 779 (5th Cir. 2000) ("[A] violation of prison regulations in itself is not a constitutional violation."); Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993) ("The procedures may be changed at the will of prison officials so long as they afford that process which is due under the Due Process Clause . . . ."). Indeed, Russell acknowledges that his claim is "not among the Wolff due process criteria." Pet'r's Br. (ECF No. 6, at 2). As such, Russell has failed to make out a claim for habeas relief under § 2241.

## III. RECOMMENDATION

Because Russell's habeas petition does not allege material sufficient to state a claim for habeas relief under 28 U.S.C. § 2241, the undersigned RECOMMENDS that the Court GRANT Respondent's Motion to Dismiss (ECF No. 3) and DISMISS the petition.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. §636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to the Petitioner and to counsel of record for the Respondent.

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 17, 2015

17

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Cordell M. Russell
#22001-171
F.C.I. Petersburg
Inmate Mail/Parcels
P.O. Box 1000
Petersburg, VA 23804

Daniel Shean
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

June 17, 2015